**SHAWAN v**
**CITY BANK FARMERS TRUST CO et**

Ohio Probate Court, Franklin Co

No 71124. Decided April 2, 1936

Frank M. Raymond, Columbus, and Hugh Huntington, Columbus, for The Columbus Gallery of Fine Arts.

J. Bruce Blanchard, Columbus, for John Jaques Howald.

George L. Gugle, Columbus, for executor.

Squire, Sanders & Dempsey, Cleveland, for City Bank Farmers Trust Co.

In our opinion it will be necessary, or at least advisable, that we shall first discuss the second question raised by the petition.

Ferdinand Howald died March 29, 1934, a resident of and domiciled in the State of Ohio, leaving a last will and testament, which was duly probated by the Probate Court of Franklin County, Ohio, and Robert F. Shawan was duly appointed and qualified as the executor of said last will and testament. The record discloses that the testator for a number of years was a resident of the state of New York, and while a resident of the state of New York on the 28th day of March, 1914, he executed a trust agreement with the City Bank Farmers Trust Company, by virtue of the terms of which he placed in the hands of said Trust Company a large number of securities, the income of which was to be paid to him during his lifetime. In this trust agreement he reserved the right to revoke or amend the same in whole or in part during his lifetime, and also to amend or revoke the same by a last will and testament. A number of amendments were made by him during his lifetime, the last of which was made on the fifth day of November, 1931. This last amendment of November 5, 1931, contains a restatement of all of the terms and conditions of the original trust agreement, and its amendments, so that as we now find it, this document dated November 5, 1931, contains the entire trust agreement as it existed prior to the death of Mr. Howald.

The provisions of the trust agreement dated November 5, 1931, by which he reserved the right to revoke or amend the Trust Agreement, either by an amendment executed by himself or by his last will, is contained in article third of such agreement, and reads as follows:

"THIRD: Said donor hereby reserves the right to amend or to revoke, in whole or in part, this instrument and the trusts created at any time prior to the first day of January, one thousand nine hundred and thirty-six, by an instrument in writing signed by him and delivered to said trustee, and so far as this instrument is revoked at any time, said donor shall be entitled to receive from said trustee the funds then in its hands, or the funds as to which this instrument has been revoked, free and discharged of the trusts hereby created. Said donor hereby also reserves the right to amend or revoke, in whole or in part, this instrument and the trusts hereby created, by his last will and testament, but this instrument and the trusts hereby created shall not be amended or revoked by said last will and testament unless said donor shall specifically and in terms so provide in his last will and testament, and then only to the extent that said last will and testament shall so specifically and in terms provide."

On the 13th day of February 1933, Ferdinand Howald executed the will which has been probated in the Probate Court of Franklin County, Ohio, and under which his estate is now being administered. In Item No. 1 of said will the testator uses the following language:

"I have heretofore executed a trust agreement with the City Bank Farmers Trust Company, (formerly known as The Farmers' Loan and Trust Company), trustee, dated March 28, 1914, which agreement has since been amended by agreements between said trustee and myself, under dates of October 30, 1924 and November 5, 1931, respectively. Under Article three of said trust agreements and amendment, dated November 5, 1931, it is provided:

"Said donor hereby also reserves the right to amend or revoke, in whole or in

part. this instrument and the trusts hereby created, by his last will and testament, but this instrument and the trusts hereby created shall not be amended or revoked by said last will and testament unless said donor shall specifically and in terms so provided in his last will and testament, and then only to the extent that said last will and testament shall so specifically and in terms provide."

It therefore becomes apparent it was the intention of the testator to make this trust agreement as amended on November 5, 1931, a part of his last will and testament. The law of Ohio provides that a testator may incorporate extraneous documents as a part of a will, provided the documents referred to are in existence at the time of making of a will, that the same are in writing, and that the original or a copy of same shall be deposited with the Probate Court having jurisdiction over the will, within thirty days of the date of the probate thereof. This last requirement was not complied with by the testator. The documents however, were called to the attention of the court, were exhibited to the appraisers of the estate, were discussed with the court, and in our opinion there was a substantial compliance of the last above named requirement of the statute.

Upon an examination of the trust agreement and the recitals of the property included therein, it becomes apparent that the estate located in the State of New York and in the hands of the Trust Company consisted entirely of personal property. It is a well known and generally approved principle of law that the situs of personal property for the purpose of administration, is that of residence of the testator at the time of his death.

Inasmuch as the estate outside of Ohio consisted of personal property and the document referred to was in existence at the time of making the will, and was specifically referred to in the will, and that it was in writing, and that the same was called to the attention of the court, it is our opinion that the trust agreement as it existed on November 5, 1931 becomes and is a part of the will of Ferdinand Howald. The two documents therefore must be read together and considered in the light of each other.

In answering this second question presented, it will be necessary that we examine Article Seven of the original trust agreement, a portion of which reads as follows:

"SEVENTH: Anything hereinabove contained to the contrary notwithstanding, after the donor's death the trustee shall pay out of the principal of the trust fund to the executor or administrator (hereinafter called "executor") of the donor's estate, such sum as such executor shall certify in writing delivered to the trustee to be necessary to pay in full all inheritance, estate, transfer, succession, probate, legacy and death taxes and duties, imposed by reason of the donor's death upon or with respect to any real or personal property required to be included in the gross estate of the donor for the purpose of the determination of the amount of any such taxes or duties, and all interest upon any such taxes or duties. The trustees shall be absolutely protected in paying to such executor the amount so specified in such certificate, and shall be under no duty to inquire into the correctness of such certificate or to see to the application made by such executor of the sum so paid to such executor. The trustee shall make such payment out of that part of the principal of the trust fund which is disposed of by subdivision (g) of Article "Sixth" of this agreement. If the aforesaid certificate of the donor's executor shall not have been received by the trustee prior to the time when the trustee is about to make actual distribution to the Columbus Gallery of Fine Arts under the provisions of said subdivision (g) of Article "Sixth" hereof, the trustee shall proceed to make distribution of the entire net balance of the principal of the trust fund then in its hands hereunder to the Columbus Gallery of Fine Arts without making any deduction or reservation whatever therefrom for or on account of the aforesaid taxes and duties or the interest thereon; and in such event the trustee shall be released from all obligation to make any payment to the donor's executor under the provisions of this article."

Upon an examination of section (g) of Article "Sixth", it becomes very apparent that Article "Sixth" provides for a residuary legacy, all of which goes to the Columbus Gallery of Fine Arts.

This Article "Seventh" of the trust agreement has been amended by Item "One" of the will of Mr. Howald in the following language:

"I hereby confirm said Article Seventh, but amended so as to provide that the certificate of my executor to the trustee (as provided in said Article Seventh of said amendment, dated November 5, 1931) shall

include all my debts and expenses of my estate, as well as transfer and succession taxes provided for in said Article Seventh. And I do further direct that my said trustee shall not make any distribution of the corpus of the trust until after my estate is closed and my executor discharged by the court having jurisdiction of my estate."

It will be noted that the only difference between Article "Seventh" in its original form and that as amended by the will, is in the fact that all of the taxes of every nature and description, and all of the expenses of administration shall be taken from the residuary legacy. There is a provision added in this amendment that does not appear in the original, and that is the provision about which the executor is asking for instructions. The testator uses the following significant language in his will, which amends Article Seventh of the trust agreement:

"I do further direct that my said trustee shall not make any distribution of the corpus of the trust until after my estate is closed and my executor discharged by the court having jurisdiction of my estate."

Why did the testator add this provision in the amendment as provided by his will? Mr. Howald was a man of large affairs, and without doubt had a great deal of experience in tax matters, and, without doubt his observation of the administration of estates had lead him to take precautions which he would not otherwise have taken. He apparently knew of the growing desire on the part of the public to take larger portions of decedent's estates in the way of taxes, both on the part of the state and federal governments. He apparently wished to protect the specific legatees and the estates created for them, and wished the entire expense of administration as well as taxes to be paid from the residue of his estate. He of course surmised that the taxes and expenses would be somewhat large. He knew that the greater portion of his estate was in securities, and he of course knew that these securities were subject to fluctuation in value. He therefore exercised the precaution which any business man of his prudence would have exercised, when he wished to protect his specific legatees and the estates created for them by providing that no distribution of his estate should be made until after all of those claims mentioned in his will should be paid.

The word "distribution" has a special significance in the Probate Law. Distribution of course means that act by which a fiduciary passes the property out of his possession and control to the persons who may be entitled to it under the will or under the statutes of descent and distribution. He used the word "distribution" apparently because the fund to be distributed was personal property.

In examining the trust agreement dated November 5, 1931, we find Mr. Howald when making direction as to the creation of the trusts uses the following language; in Article Sixth, subdivision (a):

"The trustee shall set apart from the principal of said trust fund"

We also find in subdivision (b), of the same article, he uses exactly the same language, and then in Item 3 of the will, in providing for the trust for the benefit of Rosa Howald and his two nieces he uses the following language:

"The trustee shall set apart from the principal of said trust fund"

It is also significant that in the two subdivisions of Article Sixth of the trust agreement, when it comes to the termination of the trust, he uses the word "distribute." In our opinion these words were well chosen and were to be used in their technical legal sense. He refers solely to the time when all charges against the estate are to be paid in the way of taxes and costs of administration, and the trustee parts with the possession and control of the property which passes to the specific legatees mentioned in the will. In our opinion it does not refer to the time when the trusts are to be set up. The trusts are to bet set up from property already in the hands of the trustee and the setting up of the trusts only involves an assignment or allocation of certain property in the hands of the trustee, the principal and income on which shall be segregated by the trustee and the income paid to the respective beneficiaries named in the will and the trust agreement. When the trusts are set up the property has not passed from the corpus of the trust fund. It is still held by the trustee and is always subject to the payment of any obligations included in the testamentary amendment to Item Seven of the trust agreement, in case the amount of property assigned to the residuary legatees should be consumed in the payment of those obligations.

We now come to the first question raised by the executor and concerning which he asks the direction of the court, and that is the date at which the trusts shall be set up and the valuation to be fixed in segre-

gating the securities which shall go into the various trusts created by the will and trust agreement.

The trust agreement of November 5, 1931, provides for two relatively large trusts. The provision for these trusts are found in Article Sixth of the trust agreement. The first one provides for a trust fund of $100,000.00, the income of which should be paid to John Jaques Howald during his lifetime, and upon his death, the trustee is to pay over and "distribute" the principal to the surviving issue of John Jaques Howald, and in default of issue the trust shall be disposed of according to sub-section (g) of Article "Sixth" of the trust agreement. We note that Article "Sixth" sub-section (g) is the Article which provides for the residuary legacy to the Columbus Gallery of Fine Arts.

Mr. Howald in his provision for the trust for John Jaques Howald used the following language:

"The trustees determination as to the value to be placed upon any such preferred stocks, municipal bonds, and/or other obligations, in setting up said trust fund shall be binding upon all the parties in any way interested in the trust estate created by this agreement."

The second substantially large trust is created by paragraph "B" of Article "Sixth" of the trust agreement. This provides for a trust fund of $150,000.00, the income of which should be paid to Rosa Howald, sister of the testator, during her lifetime, and such a portion of the principal as might be necessary to bring the annual income up to the sum of $15,000.00. At the death of Rosa, this fund would then be disposed of under the provisions of section (g) hereinbefore referred to, which we know is the provision creating a residuary legacy for the Columbus Gallery of Fine Arts. In this paragraph the settlor of the trust uses exactly the same language as in the preceding paragraph giving the trustee full discretion as to the valuation to be placed on any of such securities.

Upon an examination of the testator's will, we find that he amends subsection (b) of Article "Sixth" of said trust agreement, and uses the following language therein:

"I have heretofore provided, as I thought, amply for my sister, Rosa Howald, and my nieces, Marie Elizabeth Howald and Flora Elsie Howald Shawan. I now realize that, owing to changed -economic conditions, such provisions are not sufficient to main-

tain them as I desire. The following provisions of this testament are intended to amend the trust agreement and amendment in favor of my said sister, Rosa Howald, and my nieces, Marie Elizabeth Howald and Flora Elsie Howald Shawan, who are the natural objects of my bounty and my first concern.

I hereby rescind all of Article Sixth, Subdivision B of said amendment of trust agreement, dated November 5, 1931, and in lieu thereof, do hereby provide that said Article Sixth, Subdivision B shall read as follows:

"The trustee shall set apart from the principal of the trust fund the sum of Two Hundred Thousand Dollars ($200,000.00), as nearly as practicable, one-fourth of which shall consist of such preferred stocks as the trustee may in its absolute discretion select from those held thereunder at the time of my death, and the balance of which shall consist of such bonds of the United States of America, or any state or municipality thereof, whose bonds are not in default. If such bonds are not in possession of the trustee at the time of my death, then the trustee shall convert such of the assets or securities as it may have in its possession into the kind of bonds above mentioned. The trustee shall hold the fund so set apart IN TRUST, NEVERTHELESS, to invest and re-invest the same, to collect and receive the income therefrom, and during the life of my sister, Rosa Howald, to apply to her use in as nearly equal quarterly installments as practicable the net income from such trust fund and also so much of the principal thereof as, when added to such net income, will make a total of Fifteen Thousand Dollars ($15,000.00) per annum applied to her use. If the said Rosa Howald shall survive me, then upon her death the trustee shall pay over and distribute the principal of the fund then held in trust for her benefit hereunder to Marie Elizabeth Howald and Flora Elsie Howald Shawan in equal parts or their heirs per stirpes.

If the said Rosa Howald shall not survive me, then and in that event, the fund so above provided for Rosa Howald shall be likewise set aside by the trustee for the benefit of Marie Elizabeth Howald and Flora Elsie Howald Shawan, and the income from said fund and also payments from the principal fund sufficient to make an annual payment of Fifteen Thousand Dollars ($15,000.00) shall be paid quarterly, as above provided, to Marie Elizabeth Howald and Flora Elsie Howald Shawan, in equal parts for and during a period of

five (5) years from and after my decease. In event Marie Elizabeth Howald should die before the end of said five-year period, without issue, then her interest in said fund shall pass to Flora Elsie Howald Shawan and her heirs. In the event Flora Elsie Howald Shawan should die before the end of said five-year period, then all of her interest therein shall pass to her husband, Robert Foster Shawan, for and during his lifetime and then to the children of Flora Elsie Howald Shawan, or their issue per stirpes.

At the end of the five-year period, the balance of the principal shall be divided equally between Mary Elizabeth Howald and Flora Elsie Howald Shawan. If Marie Elizabeth Howald be not then living, or die without issue, then her share shall pass to Flora Elsie Howald Shawan, or if she be not then living then to the heirs of Flora Elsie Howald Shawan, and likewise, if Flora Elsie Howald Shawan be not then living the balance of the fund shall pass to her husband Robert Foster Shawan, for and during his lifetime and then to the children of Flora Elsie Howald Shawan or their issue per stirpes."

We have incorporated all of Item No. 3 of the will so as to disclose the absence of the language contained in Subdivision (b) of Article Sixth of the original trust agreement, which gives the trustee the full discretion as to the valuation to be placed upon the securities going in that trust.

The testator also by the terms of his will created a trust fund in the amount of $300,000.00, for the benefit of his niece Flora Elsie Howald Shawan, for the purpose of enabling them to keep the family homestead. Upon an examination of the article creating this trust, and also that creating the trust for the benefit of Rosa Howald, we are at a loss to find any language specifying the time at which the trusts are set up or valuation to be placed upon the securities. The trustee is given its discretion as to the kind of securities which should go into these trusts, but that is the limit or extent of the testator's direction in that respect.

We find that the will does not modify in any manner the trusts set up for John Jaques Howald, and it therefore leaves the trust agreement in that respect in its original form, in which the trustee is given absolute discretion as to the valuation to be placed upon the securities going into that particular trust.

The next question which we must determine is the meaning of the testator when he gives his trustee "absolute discretion" as to the value to be placed upon the securities going into the various trusts. As we have heretofore remarked there is no time stipulated in the will or the trust agreement when the trusts are to be created, and it is our opinion that the provision giving discretion to the trustees as to the valuation has no bearing whatsoever upon the time when the trusts are to be set up.

In giving the trustee full discretion as to the valuation, the testator apparently did not intend to confer upon his trustee the right to set up any arbitrary valuation which might come into its mind. It is our opinion that the discretion should be exercised when there is an honest doubt as to the valuation which should be used. Should some security in the hands of the trustee have a market value of a certain amount, and have a book value of a different amount, as frequently occurs with reference to certain securities, in such a case the absolute discretion as to valuation is left with the trustee.

Should the trustee put an extremely low or an extremely high valuation upon a listed security, the value of which is a matter of common knowledge in the financial world, it is our opinion that the trustee would be bound by the listed valuation and would not be permitted to abuse its discretion which was placed upon him by the testator. In other words, the discretion given to the trustee in setting up the trusts for the benefit of John Jaques Howald applies only to the exercise of discretion in the settlement of honest disputes, and gives no authority whatsoever for the abuse of same.

Now going back to the larger question as to the date when the trusts shall be set up, we have heretofore concluded that the will and trust agreement construed together specified no time at which the trusts shall be set up for the specific beneficiaries, except such time as may be indicated by Mr. Howald when he uses the following language in the first and second lines of Article Sixth of the trust agreement.

"After the death of the donor, the trustee shall hold and dispose of the principal and income of said trust as follows:"

This language remains undisturbed by the terms of the will. We are therefore confronted with the question as to the meaning of Mr. Howald when he used the above quoted language. It is quite apparent that the donor could have used the following language "at the death of the

donor." What distinction is there between the terms "At" the death of the donor, and "after" the death of the donor?

The testator of course knew that it would be impossible to set the trusts up at his death, and he also knew it would have been impossible to have complied with his wishes had he required the trusts be set up immediately after the death of the donor. So he apparently used the language which he has used feeling that the trusts should be set up as soon as practicable after the date of his death.

Counsel for the executor has furnished a line of authorities in support of its contention that inasmuch as neither the will nor the trust agreement stipulates a time for setting up the trusts, they must be set up as of the date of the death of Mr. Howald. We have examined these authorities but are sorry to say that we have been unable to find a case parallel to the one at bar or which specifically decides the question now before the court. We do believe however, that the authorities cited by the executor are more nearly in point, and are more convincing than those cited by the Columbus Gallery of Fine Arts. We will not take the trouble to quote the various authorities upon which counsel rely but simply state that they tend stronger to support the contention of the executor.

Not only is this position supported by the various authorities hereinbefore referred to, but in our opinion the position of the executor is much more equitable than that taken by the residuary legatee, the Columbus Gallery of Fine Arts. It is to be noted that all of the funds which are to be allocated to the trusts were in the hands of the New York trustee at the time of the testator's death, and for some time before that date. It is also to be noted that the trusts are not to be set up in the form of money, but in the form of securities then in the hands of the trustee. The attention of the court has been called to the fact that the securities in the hands of the trustee have appreciated in value in the amount of approximately $175,000.00 since the death of the testator.

Should the trusts be set up at the present time and the valuation placed upon the securities at the present date, it is therefore apparent that the beneficiaries of the specific trusts would suffer materially, because it would require a smaller group of securities to create the trusts than it would have required had the trusts been set up at the time of the death of the testator.

In our opinion, this would be an in-

equitable procedure on the part of the trustee, nor do we conceive it to have been the intent of the testator so to do.

Should there have been a serious depreciation in the value of those securities instead of an appreciation thereof, then the residuary legatee would have suffered rather than profited by that circumstance, and it certainly would be inequitable to make the valuation at the present time should the securities have depreciated instead of appreciated in value.

Mr. Howald in Item No. 3 of his will uses the following language:

"The following provisions of this testament are intended to amend the trust agreement and amendment in favor of my said sister, Rosa Howald, and my nieces, Marie Elizabeth Howald and Flora Elsie Howald Shawan, who are the natural objects of my bounty and my first concern."

It is very apparent that the first concern of Mr. Howald was not the Columbus Gallery of Fine Arts, The Ohio State University or any other specific legatee, but his chief concern were those three persons, and he makes that recitation in no uncertain language.

We therefore are compelled to come to the conclusion that the trusts shall be set up as of the date of the death of Mr. Howald, and the valuations of the securities at the date of his death shall be used in allocating the securities to the various funds. It is also our opinion that the beneficiary of the respective funds shall receive the income which he or she would have received had the allocation been actually made at the date of the death of Mr. Howald.

An order may be drawn accordingly.